UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DAMIEAN MARCIAL-ALEXANDER | No. 1:23-cr-00036(SDN) |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorneys, Darcie N. McElwee, United States Attorney for the District of Maine, and Andrew McCormack, Assistant United States Attorney, respectfully submits this sentencing memorandum to assist the Court in its determination of an appropriate sentence.

**INTRODUCTION**

On May 30, 2024, the defendant pled guilty to a two count indictment. Those counts charged the defendant with (1) Conspiracy to Commit Theft of Firearm from a Licensed Firearms Dealer, in violation of 18 U.S.C. § 371, and (2) Theft of a Firearm from a Licensed Firearms Dealer, in violation of 18 U.S.C. § 922(u). *See* Revised Presentence Investigation Report ("PSR") at 1. Count 1 carries a maximum term of imprisonment of five years. *Id.* at ¶ 70. Count 2 carries a maximum term of imprisonment of ten years. *Id.* The Court may impose a fine of up to $250,000 for each count. *Id.* at ¶ 79. A special assessment of $100 per count is mandatory. *Id.* at ¶ 80. Restitution is also mandatory and not in dispute. Id. at ¶ 83.

**GOVERNMENT'S RESPONSE TO
DEFENDANT'S OBJECTIONS TO PRESENTENCE REPORT**

The defendant has noted five objections to the presentence report. *See* PSR Addendum. The government will address each of these objections in turn.

**A. Defendant's Objection #1 - ¶ 31 of PSR**

The defendant argues that the defendant's base offense level should be 12 instead of 14. The government believes that the PSR has correctly calculated the base offense level as 14.

USSG § 2K2.1(a)(6)(A) states, in part, that a defendant will receive a base offense level of 14 "if the defendant (A) was a prohibited person as the time the defendant committed the instant offense;…" 18 U.S.C. § 922(g)(3) prohibits possession of a firearm by someone who is "an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802))." The First Circuit has held that to establish a person is a "prohibited person" pursuant to 18 U.S.C. § 922(g)(3), the "offender must have used a controlled substance (1) regularly, (2) over a period of time, (3) proximate to or contemporaneous with the possession of the firearm." *United States v. Espinoza-Roque*, 26 F.4th 32, 35 (1st Cir. 2022) *citing United States v Caparotta*, 676 F.3d 213, 216 (1st Cir. 2012)(internal quotations omitted).

The defendant is a prohibited person pursuant to 18 U.S.C. § 922(g)(3) and thus the base offense level of 14 is appropriate. First, on the day of the robbery, co-defendant Andino reported the following:

> Shortly after arriving in Marcial-Alexander's apartment building, Andino reported the group smoked marijuana together in Menard's car as smoking was prohibited in their apartment. The group then visited in Marcial-Alexander and English's apartment. The men continued to smoke

    marijuana in the bathroom with the window open, to subvert the "no
    smoking" rule… Andino implied Ansart and Marcial-Alexander were also
    consuming "lean" – a concoction containing liquid codeine.

PSR at ¶ 19.

  Second, during his PSR interview, the defendant stated that he "used marijuana daily until his arrest in January of 2023." *Id.* at ¶ 62. He also admitted that "[h]is use of lean continued daily until his arrest in January of 2023." *Id.* at ¶ 63.

  **B. Defendant's Objection #2 - ¶ 33 of PSR**

  The government will not be pursuing this two-level enhancement.

  **C. Defendant's Objection #3 - ¶ 34 of PSR**

  The government believes that a five-level enhancement is appropriate pursuant to USSG § 2K2.1(b)(5)(C)(i)(III). That guideline states, in part, that a five level enhancement should be applied if the defendant "transported, transferred, sold, or otherwise disposed of, or purchased or received with intent to transport, transfer, sell, or otherwise dispose of, two or more firearms knowing or having reason to believe that such conduct would result in the receipt of the firearms by an individual who … (III) intended to use or dispose of the firearms unlawfully…"

  Here, the defendant and his co-defendant Ansart intended to sell the firearms that they stole from JR's Trading and Pawn in Waterville. As recounted in the PSR, "On April 4, 2022, Marcial-Alexander sent a message to Ansart which read, 'In 40 minutes ima go to the store and count what we should get' and 'I hope he got some new glocks on resale them hoes 2k minimums.' Law enforcement interpreted that to mean Marcial-Alexander was going to JR's

Trading and Pawn in Waterville, Maine, to look at the gun inventory to determine what they should steal and identified Glocks as desired weapons due to their street value." PSR at ¶ 14. As these firearms were stolen, the firearms received by any other person would be used unlawfully.

### D. Defendant's Objection #4 - ¶ 36 of PSR

The government believes that a two level enhancement is appropriate pursuant to USSG § 3B1.1(c). That guidelines section states: "If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in subsections (a) or (b), increase by two levels." As discussed by the defendant in his objection to this enhancement, USSG § 3B1.1(c) is warranted if the government proves that "(1) the criminal enterprise involved at least two complicit participants (of who the defendant may be counted as one), and (2) the defendant, in committing the offense, exercised control over, organized, or was otherwise responsible for superintending the activities of at least one of the persons involved." *United States v. Cruz*, 102 F. 3d 1, 3 (1st Cir. 1997). Attributes of a person who meets that criteria include someone who recruits others, gives directions, and directs the division of profits. *See, e.g., U.S. v. McCormick*, 773 F.3d 357, 360 (1st Cir. 2014)(supervisory or managerial role is evidenced by some "manifestation of authority" on the part of the defendant.). The "key inquiry" is whether the government can prove that "the defendant exercised control over, managed, organized, or superintended the activities of another actor." U.S. v. Figaro-Benjamin, 100 F.4th 294, 307 (1st Cir. 2024)(cleaned up).

Probation's response to the defendant's objection (and based on uncontested facts taken from ¶ 14 of the PSR) is on point:

4

>The Probation Office maintains the enhancement was appropriately applied.  As per the offense conduct, the defendant recruited Ansart to participate in the burglary.  Via text messages and Instagram messages, the defendant communicated with Ansart.  On February 17, 2022, Marcial-Alexander's message to Ansart read, "You gotta come up let's hit this mf store Nbs and I can buy all the ammo that day."  On February 23, 2022, Marcial-Alexander wrote, "Bruhh you needa get down here so we can like this store I just saw a caswe of 9mm in there cases with pistols" and "So much ammo and sticks  Lets get rich and fine a ride I know so many plays for them and when's soon I wanna lick it now cause the ammo 9mm hard to find towards the end of the month around here."  On April 4, 2022, Marcial-Alexander sent a message to Ansart which read, "In 40 minutes ima go to the store and count what we should get" and "I hope he got some new glocks on resale them hoes 2K minimums."
>
>The message exchanges prove the criminal enterprise involved at least two complicit participants.  [The defendant also organized the activity of Ansart.] The defendant recruited Ansart, directed him by determining which guns should be stolen[, and discussed division of the profits with respect to the possible resale value of the Glock firearms.]

PSR Addendum, p. 28.

### E. Defendant's Objection #5 - ¶ 90 of PSR

The defendant objects to Recommended Special Condition 5 as it relates to "the warrantless search of electronic media, i.e. computers, electronic communications, data storage devices, cloud storage or media, associated with him."  Recommended Special Condition 5 provides:

>A United States probation officer may conduct a search of the defendant and of anything the defendant owns, uses, or possesses if the officer reasonably suspects that the defendant has violated a condition of supervised release and reasonably suspects that evidence of the violation will be found in the areas to be searched.  Searches must be conducted at a reasonable time and in a reasonable manner.  Failure to submit to a search may be grounds for revocation of release.

PSR at ¶90.

The government believes that Recommended Special Condition 5 is appropriate.  As a preliminary matter, judges have "significant flexibility" in

crafting special conditions. *See United States v. Marino*, 833 F.3d 1, 10 (1st Cir. 2016) (*quoting United States v. Garrasteguy*, 559 F.3d 34, 41 (1st Cir. 2009)). A special condition must be "reasonably related" to certain factors, including "the nature and circumstances of the offense and the history and characteristics of the defendant," *see* 18 U.S.C. §§ 3583(d)(1), 3553(a)(1) — as well as three goals of punishment: "deter[ring] and protect[ing] others and … rehabilitat[ing] the defendant," *see Marino*, 833 F.3d at 10 (*citing* 18 U.S.C. § 3553(a)(2)(B)-(D)). Of note too is that the special condition must "involve[ ] no greater deprivation of liberty than is reasonably necessary" to accomplish those goals, *see* 18 U.S.C. § 3583(d)(2), and "be supported by the record," *see Marino*, 833 F.3d at 10 (*quoting Garrasteguy*, 559 F.3d at 42).

Recommended Special Condition 5 meets all of these criteria. As stated by Probation, law enforcement has noted that drug deals, firearms deals, and other illegal activity are often conducted via computers on-line and using social media. Indeed, in the present case, the defendant used extensive text messages and Instagram messages to communicate with his co-defendant and others about the Waterville robbery. *See, e.g.*, PSR at ¶¶ 14-16. Similarly, on January 28, 2023, law enforcement in Massachusetts began following an Instagram feed from the defendant which showed the defendant and another individual in possession of illegal firearms. *See* PSR at ¶ 23. On that same day, the defendant was located by law enforcement and allegedly pointed a gun at law enforcement. *Id*. He was subsequently charged with multiple drug, firearms, and assault offenses. *Id*. at ¶ 24. Recommended Special Condition 5 is reasonably related to the Section

6

3553(a) factors and is necessary to protect the public from future crimes that may be committed by the defendant using electronic media.

### THE GOVERNMENT'S SENTENCING RECOMMENDATION

The government submits that an analysis of the factors enumerated in 18 U.S.C. § 3553(a) leads to the conclusion that a sentence of 51 months would satisfy the interests of justice in this case. This sentence is sufficient, but not greater than necessary, to comply with the statutory purposes of sentencing set forth in 18 U.S.C. § 3553(a).

#### A.   Nature and Circumstances of the Offense

The government will not restate the underlying facts of the offense described in the PSR at ¶¶ 13-22. However, the government would like to highlight several points.

First, as the PSR indicates, this was a carefully planned robbery and not a spur of the moment decision. Both the defendant and Mr. Ansart took time to plan the Waterville robbery. Indeed, the defendant actually drew a map of their route from his apartment to the pawn shop. The defendant also visited the pawn shop in order to determine which guns would be available on the night of the robbery.

Second, the danger involved in this robbery cannot be understated. As a preliminary matter, the danger involved in breaking into a pawn shop in the middle of the night to steal firearms is obvious. If the owner of the pawn shop, law enforcement, or even a passerby had come upon the robbery, the consequences could have been tragic. Perhaps even more troubling, however, is

the long-term result of this robbery. Only a small number of the guns stolen that night have been recovered. It is not a significant leap to suspect that these guns have ended up in the hands of criminals who may use them in a variety of violent ways.

### B. Defendant's History and Characteristics

While it is true that the defendant does not have an adult criminal conviction, it is clear that he has had significant prior involvement with firearms.

First, as detailed in ¶ 9 of the PSR, the defendant was identified as the original purchaser of a firearm that was seized from a criminal who was wanted for a homicide investigation. *Id.* Subsequent law enforcement investigation revealed that the defendant had purchased multiple firearms. *Id.* When he was confronted with these purchases, he initially lied to law enforcement about the whereabouts of the firearms and then claimed that they had been stolen. *Id.*

Second, as described in ¶¶ 23-24 of the PSR and discussed above, in January of 2023, the defendant was alleged to be in possession of drugs and illegal firearms, and also alleged to have pointed a gun at law enforcement. As a result of these actions, the defendant faces nearly a dozen charges in state court in Massachusetts. *Id.* at ¶ 47.

### C. Deterrence and the Protection of the Public

The defendant's sentence should afford adequate deterrence to criminal conduct and protect the public from crimes he may commit in the future. *See* 18 U.S.C. § 3553(a)(2)(B)–(C). These two factors reflect the need for both general and specific deterrence. *See, e.g.*, United States v. Russell, 600 F.3d 631, 637 (D.C. Cir. 2010) (explaining that these statutory provisions "codify the penal goals

of general and specific deterrence"). The need to deter individuals from committing firearms crimes is obvious. These crimes are destructive and have lasting consequences for individuals and communities. Deterring the defendant and others like him is an interest that deserves significant weight at sentencing.

## CONCLUSION

The government anticipates recommending a sentence of incarceration of 51 months and submits that such a sentence will satisfy the goals of sentencing identified in 18 U.S.C. § 3553, reflecting the seriousness of the defendant's crime. The government will urge the Court to impose that sentence whether or not the Court agrees with the government's position on the disputed guideline issues. In the government's view, a sentence of 51 months is a just sentence that comports with section 3553(a), completely untethered from the guidelines. *See* United States v. Ayala, 991 F.3d 323, 326-27 (1st Cir. 2021) (noting that "the District Court [made] clear that the sentence it imposed did not depend on its choice between those two [base offense levels]" and thus "any error that the District Court may have made . . . was harmless, because any such error had no effect on the sentence imposed").

                    Respectfully submitted,

                    DARCIE N. MCELWEE
                    UNITED STATES ATTORNEY

By:   /s/ Andrew McCormack
       Andrew McCormack
       Assistant United States Attorney

Dated: January 10, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2025, I electronically filed this Government's Sentencing Memorandum with the Clerk of Court using the CM/ECF system which will send notifications of such filing to Jeff Silverstein.

    Respectfully submitted,

    DARCIE N. MCELWEE
    UNITED STATES ATTORNEY


By:   /s/ Andrew McCormack
    Andrew McCormack
    Assistant United States Attorney